**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | | |
|---|---|---|
| ANTONIO WILLIAMS, | * | |
| ADC #152981 | * | |
| | * | |
| Petitioner, | * | |
| v. | * | No. 5:18cv00091-JJV |
| | * | |
| WENDY KELLEY, Director, | * | |
| Arkansas Department of Correction | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM AND ORDER**

**I.   BACKGROUND**

Petitioner, Antonio Williams, an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. (Doc. No. 1.)   Mr. Williams was convicted of capital murder by a jury in Pulaski County on April 18, 2013.   (Doc. No. 5 at 1.)   He was sentenced to life imprisonment without the possibility of parole.   (*Id*.)

He filed a direct appeal to the Arkansas Supreme Court and the Court affirmed.   *Williams v. State*, 2014 Ark. 253.   In affirming his conviction, the Arkansas Supreme Court recited the evidence of the case as follows:

> On the evening of December 28, 2011, Kelvin Lott Shelton and his girlfriend, Torrece Graydon, left their apartment in North Little Rock and drove to Little Rock in a Jeep Grand Cherokee that they had borrowed from Graydon's sister. According to Graydon, the purpose of this outing was for Shelton to sell marijuana to someone Shelton referred to as "Big Mike," who was otherwise known as Michael Williams, appellant's brother. After receiving directions, Shelton drove to the area of 15th and Jones Streets and parked near the curb behind a black Chrysler 300. In describing what occurred next, Graydon stated that two men exited the Chrysler and entered the back seat of the Jeep. She testified that Shelton showed the marijuana to the two men, who then wanted to obtain the approval of their "bro"

for the purchase. Graydon said that the two men reentered the Chrysler and that, after a few minutes, the two men and another man emerged from the Chrysler. The third man, whom Graydon later identified as appellant, then entered the back seat of the Jeep, while the others remained standing outside. She testified that appellant leaned forward between the front seats in the area of the console, shoved her with his arm, put a gun to Shelton's head and said, "Give me what you got. Give it up." Graydon said that she unfastened her seat belt, got out of the car, and ran. While fleeing, she heard gunshots.

After hiding under a car for a time, Graydon found refuge in a man's home, and she called the police. Officer Debra Atkisson responded to the call, and she and Graydon set out to locate the Jeep. They found the vehicle, which had crashed into a pole at Jones and 14th Streets. Atkisson found Shelton dead inside the Jeep. The autopsy revealed that he had died of a single gunshot wound to the back.

On the night of the murder, other than knowing the moniker "Big Mike," Graydon could not identify any of the assailants, but she described the man with the gun as being 5' 7″ tall and weighing 160 pounds and said that he was wearing a "do-rag." Graydon telephoned a detective on January 3, 2012 and advised that she remembered that one of the suspects had facial scars from having been burned. Based on additional information received from Shelton's sister, Akeya Shelton, the police developed appellant and his brother Michael as suspects in the murder. Both appellant and Michael bear scars on their faces resulting from a fire that occurred when they were children. Detective Kevin Simpson prepared two photo arrays for Graydon to view. One of the them contained a photograph of appellant, while the other included one of Michael. On January 4, 2012, Graydon identified appellant in the photo array as the man who had held a gun to Shelton's head. She also identified Michael from the photospread as one of the other men, but she later recanted that allegation after seeing Michael at a court appearance and realizing that, because of his large size, he was not one of the men she had encountered that night.

The police acquired a video from a surveillance camera located near the crime scene that depicted the movements of the Jeep and the Chrysler 300, and the persons riding in the Chrysler, shortly before and after the Jeep struck the pole. Also at trial, Sherice Williams, appellant's sister, confirmed in her testimony that appellant drove a black Chrysler 300. During a search, the police found appellant's wallet and a soda can inside the vehicle. Testing revealed that appellant could not be excluded as a contributor of DNA found in the soda can. Crime-scene specialists also collected pieces of plastic from a taillight at the scene. One of the taillights on the Chrysler 300 was broken, and the pieces found in the street were a perfect forensic match to the Chrysler's taillight. When appellant was arrested, he told the police that he was 5'7" tall and weighed 160 pounds. The State also introduced into evidence two phone calls made by appellant from jail. In one of them, he discussed

paying Graydon $1,000 to change her story. In another, appellant stated that Michael was not present when Shelton was killed.

Based on the evidence, the jury found appellant guilty of capital murder. The State had waived the death penalty and, therefore, appellant received a sentence of life in prison without parole, plus the seven-year enhancement for committing the offense with a firearm. This appeal followed.

*Id*. at 1–4.

Mr. Williams filed a timely petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37, but the circuit court denied relief. (Doc. No. 5 at 1.) His *pro se* appeal of this denial to the Arkansas Supreme Court was also unsuccessful. *Williams v. State*, 2017 Ark. 123 (2017).

Mr. Williams filed the instant Petition for Writ of Habeas Corpus on April 11, 2018. (Doc. No. 1.) He asserts the trial court erred in refusing to suppress an in-court identification made by Torrece Graydon, and he was denied a fair trial because the prosecutor made improper remarks in closing argument. (*Id.* at 6, 13.) Additionally, he asserts six grounds for relief on the basis of ineffective assistance of counsel. (*Id*. at 17-35.) Finally, Mr. Williams argues the cumulative effect of the errors committed in his case violate his due process rights. (*Id*. at 35-37.) Respondent counters that Mr. Williams's Petition should be denied because his claims have either already been adequately addressed by the State courts, procedurally defaulted, or are incognizable. (Doc. No. 5.) After careful consideration of the Petition and the Response, I find Mr. Williams's Petition should be dismissed with prejudice and his Motion for Discovery should be denied.

## II.     ANALYSIS

### A.     Deferential Review

In the interests of finality and federalism, federal habeas courts, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a "limited and deferential

review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Under this statute, federal review of underlying state court decisions is limited because federal courts may only grant habeas relief if the claim was adjudicated on the merits in the state court proceeding and the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); see also *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision will be based on an "unreasonable determination of the facts in light of the evidence presented . . . only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003). The record does not support that such a case exists here.

### 1. In-Court Identification Suppression

In Claim 1, Mr. Williams repeats the same argument he presented in state post-conviction proceedings. His claim that the trial court denied him a fair trial by refusing to suppress an in-court identification of him by witness Torrece Graydon was presented to the Arkansas Supreme Court in his direct appeal. (Doc. No. 5-4 at 5-13.) When evaluating Mr. Williams's argument, the Arkansas Supreme Court held:

> Prior to trial, appellant moved to suppress Graydon's identification of him from the photospread, as well as her identification of him at trial. He argued that the photo lineup was unduly suggestive because his was the only photograph of a male who had facial scarring and who was wearing a knit cap. He thus contended that Graydon's identification of him from the photo array was inadmissible and that the pretrial identification tainted any subsequent identification of him at trial. After a hearing, the circuit court agreed with appellant's argument that the photo array was impermissibly suggestive and suppressed evidence of that lineup. However, the circuit court denied appellant's request to preclude Graydon's in-court identification of him at trial. Appellant argues on appeal that the circuit court erred because the net effect of the ruling was of no benefit to him because it was necessary for him to use the suggestiveness of the photospread to attack Graydon's identification of him as the perpetrator at trial.
>
> This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Ray v. State,* 2009 Ark. 521, 357 S.W.3d 872; *Fields v. State,* 349 Ark. 122, 76 S.W.3d 868 (2002). Even if prior identifications may have been improper or suggestive, an in-court identification will not be suppressed if indicia of reliability are found to independently exist. *Tester v. State,* 342 Ark. 549, 30 S.W.3d 99 (2000); *Burnett v. State,* 302 Ark. 279, 790 S.W.2d 137 (1990). Thus, reliability is the linchpin in determining the admissibility of identification testimony. *Mezquita v. State,* 354 Ark. 433, 125 S.W.3d 161 (2003); *Mills v. State,* 322 Ark. 647, 910 S.W.2d 682 (1995). In determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *Mezquita, supra; Kimble v. State,* 331 Ark. 155, 959 S.W.2d 43 (1998). The conclusion to be drawn from these factors is dependent on the totality of the circumstances. *Tester, supra.*

> It is for the trial court to determine if there are sufficient aspects of reliability present in an identification to permit its use as evidence. *Milholland v. State,* 319 Ark. 604, 893 S.W.2d 327 (1995). It is then for the jury to decide what weight that identification testimony should be given. *Bishop v. State,* 310 Ark. 479, 839 S.W.2d 6 (1992). We do not reverse a ruling on the admissibility of identification unless it is clearly erroneous, and we will not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of misidentification. *Tester, supra* (citing *Chenowith v. State,* 321 Ark. 522, 905 S.W.2d 838 (1995)).
>
> In this case, the circuit court found that the pretrial identification was overly suggestive but nonetheless concluded that the in-court identification should not be suppressed. We are unable to say that the circuit court's ruling is clearly erroneous. Graydon viewed the assailant in the close confines of a vehicle. Graydon testified that the dome light came on when appellant entered the vehicle, and she said that appellant was positioned near her face when he leaned over the console. She accurately described appellant's build at the outset and later recalled seeing distinctive scarring in the area around his mouth. Graydon testified that she was 100 percent certain that appellant was the man with the gun. Although Graydon initially, but mistakenly, identified Michael as one of the assailants, she never wavered in her conviction that appellant was the man with the gun. Finally, Graydon selected the photo of appellant in the lineup one week after the murder. Considering the totality of the circumstances, we perceive no substantial likelihood of misidentification and hold that the circuit court did not err in determining that Graydon's identification was reliable.

*Williams*, 2014 Ark. 253 at 4–6.

After reviewing the Arkansas Supreme Court's opinion, I find it is not contrary to or an unreasonable application of an established federal law. Petitioner admits the Arkansas Supreme Court evaluated the in-court identification based upon factors "substantially similar" to ones established by the Supreme Court of the United States for the admission of identification testimony. *See Manson v. Brathwaite*, 432 U.S. 98 (1977). Furthermore, the opinion was not based on an unreasonable determination of the facts. Before allowing the in-person identification, Graydon testified that she had a face to face, illuminated view of Williams. *Williams*, 2014 Ark. 253 at 6. She correctly described his build and indicated that she was one hundred percent certain that Williams had the gun that night. *Id*. Based on the facts utilized by the Arkansas Supreme

6

Court, I cannot find their analysis to be an unreasonable one. Therefore, deference to the state court is appropriate, and I cannot grant relief based on this claim.

## 2. Ineffective Assistance Claims 3(A) & (B)

Mr. Williams asserts his trial counsel was constitutionally ineffective in the way he failed to investigate and present testimony at trial of an alibi witness, and for introducing the photograph spread into evidence after the trial court had ordered it suppressed. However, the Arkansas Supreme Court thoroughly reviewed both of these claims, using *Strickland v. Washington*, 466 U.S. 668, 104 (1984), as its framework and concluded the claims lacked merit. Upon review of the Arkansas Supreme Court's decision in Mr. Williams's case, I find it is not contrary to clearly established federal law. Under 28 U.S.C. § 2254(d)(1), the only remaining question is whether the Arkansas Supreme Court made a reasonable application of that standard to Mr. Williams's claims. Before answering that question, though, it is important to note that when the 28 U.S.C. § 2254(d)(1) reasonableness standard is applied to a state court's adjudication of ineffective assistance of counsel claims, federal habeas courts are only required to "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then [determine] . . . whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

In its review, the Arkansas Supreme Court found that both claims were meritless under *Strickland*. With respect to the claim that Mr. Williams's counsel was ineffective for failing to present alibi testimony from Graydon, the Arkansas Supreme Court credited Mr. Williams's trial attorney's testimony at the Rule 37 hearing. The Arkansas Supreme Court summarized the testimony as follows:

> Williams's trial attorney testified at the Rule 37 hearing that he had investigated the witnesses that Williams had given him, although he did not recall specifically whether he had talked to Johnson. He did remember that all of the alibi witnesses had placed both Michael and Williams at the house and that they were more certain about the fact that Michael was there. Because the defense strategy was based on the possibility that Michael had committed the murder, counsel concluded that all of the testimony would be more harmful than helpful.
>
> On appeal, Williams appears to contend that, even if the trial court did not believe his testimony, counsel had failed to investigate sufficiently to discover Johnson's potential testimony. When counsel was questioned at the Rule 37 hearing about whether other alibi witnesses had mentioned Johnson's presence at the house, however, counsel indicated that he did not specifically recall, but that if he had understood that there was anyone who could have said Williams was at the house, he would have spoken to them. In denying the claim, the trial court referenced this testimony and appears to have concluded that counsel was credible in testifying that he would have spoken to Johnson if her name had been mentioned. When there is conflict that presents an issue of credibility, it is the trial court's task as trier of fact to resolve it, and, especially where the petitioner in a Rule 37 proceeding has the most interest in the outcome of the proceeding, the court is free to believe all or part of any witness's testimony. We will not overturn the decision of the trial court in a matter based on an assessment of credibility by the trier of fact.

*Williams*, 2017 Ark. 123 at 5–6.

I find no constitutional error in the Court's holding here, nor do I find they applied the facts unreasonably. The same applies for Mr. Williams's second ineffective assistance of counsel claim that his trial attorney was deficient for introducing the photo spread into evidence after it had been suppressed. The Arkansas Supreme Court, in utilizing the *Strickland* standard, attributed the decision to trial strategy, saying:

> Counsel made a deliberate decision to allow introduction of the evidence, and he provided his specific reasoning for doing so. In order for the defense theory to be successful, countering the in-court identification of Williams was, as counsel indicated, crucial. Williams does not suggest any alternative tactic that may have been implemented by counsel. We cannot conclude that the trial court was clearly erroneous in determining that counsel's decision was one of reasonable trial strategy. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective.

*Id.* at 9.

Each of the Court's conclusions here were reasonable, and I do not believe fairminded jurists would disagree as to the decisions they arrived at. As such, I find that the Arkansas Supreme Court's ruling should be given deference on these claims and relief should not be granted.

**B.     Procedural Default**

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849.

A state inmate procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court.

*Id.* When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Id.* If it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

        **1.    Due Process Claim**

In his second claim, Mr. Williams argues that he was denied due process and a fair trial based upon remarks made by the prosecution in their closing argument. Respondent asserts that this claim is procedurally defaulted because it has not been fairly presented to the state courts as a federal issue. Based on the evidence presented, I must agree. The argument presented to the Arkansas Supreme Court by Mr. Williams was written as a violation of state law, not federal law. While Mr. Williams did cite references to the Fifth Amendment right against self-incrimination in his appeal of the Rule 37 hearing, that is not the argument he presents here. In fact, the Arkansas Supreme Court specifically noted to "the extent that appellant argues that the prosecutor's comments touched on his right not to testify under the Fifth Amendment, we simply note that this argument was not raised at trial. We will not consider arguments that are raised for the first time

on appeal." *Williams*, 2014 Ark. 253 at 8. While I do take note of Mr. Williams's argument that the claim need only be "substantially similar" to what was argued at the state level, I do not find this claim to fit that requirement. *Murphy* is clear that the claim must have referred to a specific federal issue when the case was before the state courts, which is absent in the record presented here. Therefore, this claim is procedurally defaulted.

### 2. Ineffective Assistance of Counsel Claims 3 (C), (D), (E), & (F)

From the outset, Respondent asserts these four claims are all procedurally defaulted because they were not raised in Williams's state post-conviction proceedings. Mr. Williams admits these claims are all procedurally defaulted but argues that cause and prejudice exists under *Martinez v. Ryan*, 566 U.S. 1 (2012), to excuse the default. (Doc. No. 14 at 3.) These four claims are as follows:

> C. Trial counsel was ineffective for offering into evidence a recorded statement and transcript detailing Michael Williams's statement that Antonio Williams admitted his presence at the crime scene and his involvement in the shooting of Shelton.
>
> D. Defense counsel was ineffective for overstating the evidentiary value, and for failing to seek independent DNA testing, of the soda can found by police in the Chrysler 300 vehicle that was involved in the homicide.
>
> E. Defense counsel was ineffective for failing to investigate with regard to the photo spread compiled by the police in this case.
>
> F. Trial counsel was ineffective for failing to seek and obtain from the State the voice message supposedly left by Torrece Graydon with the police one week after the murder was committed.

(Doc. No. 1 at 25-33.)

In *Martinez*, the United States Supreme Court modified the general rule that an attorney's errors in a post-conviction proceeding do not qualify as cause for a default:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an

> ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

566 U.S. at 14. In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Court expanded the holding in *Martinez* to cases in which the state procedures, by reason of their design and operation, make it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." And in *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013), the United States Court of Appeals for the Eighth Circuit held the *Trevino* analysis applies – and *Martinez* is therefore applicable – in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal.

According to Mr. Williams, *Martinez* excuses the default of these claims because his Rule 37 counsel was ineffective for failing "to investigate Williams case adequately and uncover these potential *Strickland* claims for relief." (Doc. No. 14 at 5.) I disagree. Given the facts in this case and the claims raised here, under *Martinez* and *Trevino*, I conclude that, under the first prong of this analysis, none of Mr. Williams's defaulted claims rise to the level of "substantial." A review of the record indicates trial counsel had reasonable, strategic justifications for taking these actions at trial. Additionally, Mr. Williams's support for the supposed inactions of defense counsel relies only on speculation. Thus, claims 3 (C), (D), (E), and (F) are procedurally barred and should be dismissed.

    **C.**     **Cumulative Error**

Finally, Mr. Williams claims the cumulative effect of the errors committed in this case renders his conviction unfair and violative of due process, citing to *Harris v. Housewright*, 697 F.2d 202, 206 (8th Cir. 1982).  (Doc. No. 1 at 35.)  He admits "different panels of the Eighth Circuit have held that the 'cumulative error' doctrine does not apply in this Circuit. However, [Williams] notes that these are panel decisions, and one panel does not have the authority to overrule a decision rendered by another panel."  (Doc. No. 1 at 36.)  Petitioner cites to *Mader v. United States*, 654 F .3d 794, 800 (8th Cir. 2011) (en banc) to support this proposition when faced with conflicting federal opinions, the earliest opinion must be followed.

I credit Counsel for his zealous advocacy of Mr. Williams.  However, I find Mr. Williams's standalone claim of cumulative error is simply not cognizable in the Eighth Circuit.  I find *Mader* does not apply because here we do not have conflicting opinions.  Rather we have a decision from the Eighth Circuit saying that *Harris* is no longer good law.  *See Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991) (establishing that *Harris* is no longer good law in the Eighth Circuit and rejecting cumulative error as a cognizable habeas claim.)  Additionally, the Eighth Circuit has specifically ruled that *Harris* is no longer valid in light of the decision in *Strickland v. Washington*.  *Wainwright v. Lockhart*, 80 F.3d 1226 (8th Cir. 1996).  So, Mr. Williams's claim regarding cumulative error is simply not cognizable and I cannot grant relief on this basis.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A court may only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2). In this case, Mr. Williams has failed to make a showing that his constitutional rights were violated. Therefore, no certificate of appealability should be issued.

### IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.   Mr. Williams's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2.   A certificate of appealability will not be issued.

3.   Mr. Williams's Motion for Discovery (Doc. No. 13) is DENIED as moot.

SO ORDERED this 18th day of June 2019.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE